UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN A. WHEELER, | ) |
| Plaintiff, | ) |
| | ) No. 15 C 673 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ASSURANT SPECIALTY PROPERTY d/b/a | ) |
| ASSURANT, AMERICAN SECURITY | ) |
| INSURANCE COMPANY d/b/a ASSURANT, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Stephen A. Wheeler sought coverage for alleged damage to his house caused by a windstorm from the providers of his home insurance policy, Defendants Assurant Specialty Property d/b/a Assurant and American Security Insurance Company d/b/a Assurant (collectively, "ASIC"). After delays in processing his claim, ASIC determined that only a portion of the claimed damages were caused by the windstorm and denied the majority of Wheeler's claim. Wheeler now brings this suit, alleging breach of contract, vexatious and unreasonable conduct in violation of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/155, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, fraud, and unjust enrichment. Before the Court is ASIC's motion to dismiss Counts I through VI of the complaint [29], which is granted in part and denied in part.[1] Because Wheeler sufficiently alleges breach of the insurance policy, accompanied by actions that could amount to unreasonable and vexatious conduct, those claims survive. Wheeler may also proceed on his

---

[1] Counts VII through XI were directed at Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc., who had previously been named as Defendants in the lawsuit. Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc. were dismissed without prejudice on April 1, 2015, and so those counts are no longer pending. Doc. 28.

breach of fiduciary duty claim because that claim may be pleaded in the alternative to his breach of contract claim. But Wheeler's unjust enrichment claim is dismissed because he has alleged the existence of a valid insurance policy. And although his ICFA claim is not just a reformulation of his breach of contract and bad faith allegations, Wheeler has not met Rule 9(b)'s particularity requirements and so that claim is also dismissed. Finally, Wheeler's fraud claim is dismissed because he has not sufficiently alleged the required element of reliance.

## BACKGROUND[2]

Wheeler owns property at 1317 E. 50th Street in Chicago, Illinois. Wells Fargo Bank, N.A. ("Wells Fargo Bank") holds the mortgage for Wheeler's property. On May 20, 2011, Wells Fargo Bank and Wells Fargo Insurance, Inc. ("Wells Fargo Insurance") required Wheeler to obtain insurance for the property from ASIC. The ASIC policy had an initial annual premium of $4,497.00.

On July 11, 2011, a windstorm near Wheeler's property caused significant damage to the interior and exterior of Wheeler's house. Wheeler filed a timely claim under his ASIC policy that month. But from then until January 2012, ASIC did little to process Wheeler's claim and did not hire a professional expert to examine Wheeler's house. In January 2012, Wheeler contacted ASIC, informing it that he had retained a structural engineer to examine his house. ASIC's Raymond Parello responded that he also had contacted a structural engineer. On March 28, 2012, Parello informed Wheeler that ASIC had hired Alan Moersfelder of Kelsey Engineering and Electric Inc. Moersfelder conducted his inspection on April 4 and provided ASIC with a report on April 9. He concluded that it was possible that "much, if not all, of the

---

[2] The facts in the background section are taken from Wheeler's complaint and the exhibits attached thereto and are presumed true for the purpose of resolving ASIC's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

visible floor, wall, ceiling, and visible structural member damage inside the house is a direct result of the July 10, 2011 weather event" and that it was "very possible that there is additional damage which is not visible." Ex. F to Compl. at 3. He further noted that it was "difficult to postulate any man-made or natural event, other than a weather event, that could cause the visible damage to the Wheeler residence, cause the visible damage to the trees in the immediate neighborhood, cause the roof damage which has been repaired, and yet not damage other close proximity buildings." *Id.*

On April 25, after further discussions with Parello but no concrete action, Wheeler wrote Parello a letter expressing his frustration with the delays in processing his claim. He requested written confirmation from an authorized individual at ASIC that the damages to the house and all related repairs and costs were covered claims, with any exceptions, restrictions, and limitations to be set forth at that time. Wheeler also asked to engage his preferred contractors to perform the repairs instead of accepting those chosen by ASIC and for clarification regarding payment of rental, moving, and storage expenses while repairs were being performed on the house.

Approximately a year later, on March 11, 2013, at ASIC's request, Wheeler executed a sworn statement in proof of loss regarding the July 11, 2011 damage to his house, claiming $695,943.00 under the policy.[3] On March 27, Parello notified Wheeler's counsel that ASIC was reviewing the materials. In an April 24 conversation with Wheeler's counsel, Parello represented that the amount claimed was greater than ASIC had expected. Wheeler's counsel

---

[3] Although the complaint does not mention any events between April 25, 2012 to March 11, 2013, Wheeler attached a letter from his counsel to ASIC dated June 27, 2013, which includes a timeline of events. Ex. L to Compl. at 4. The timeline indicates that in August 2012, Moersfelder prepared an estimate of $51,000 for investigative demolition and preliminary construction specifications, which was forwarded to Parello. In October 2012, architectural and engineering notes were prepared for the needed repair work. In December 2012, Parello sent a letter to Wheeler indicating that he had attempted to contact Wheeler for several months before issuing a check for approximately $18,000. In January 2013, ASIC was notified of multiple bids Wheeler received for the necessary repair work.

suggested that all engineers and contractors meet to expedite the repairs to Wheeler's house. That meeting occurred on June 7, but no ASIC representative was present. On June 25, ASIC's Tom Frankino told Wheeler's counsel that the claim amount was over his authority and that additional inspections were required. ASIC hired Peter Quinn of Rimkus Consulting to perform the additional inspection, which occurred on July 18. Rimkus Consulting issued its report on August 13, finding that Wheeler's house suffered no structural damage as a result of the windstorm, although it attributed the damage to the roof that had already been repaired and damage to an upper pane of glass in a third floor bathroom window to the storm. Instead, Rimkus Consulting concluded that "[t]he undulations observed in the floor systems, un-level stairs and localized small areas of surface cracks in the ceilings and walls resulted from one or more of the following items: a) Inadequate support for the transfer of dead and live loads from the roof to foundation piers. b) Construction defects. c) Expected natural deterioration over time." Ex. N to Compl. at 12–13. Based on this report, ASIC rejected Wheeler's submitted proof of loss on September 6. But because Rimkus Consulting found that a pane of glass in the third floor bathroom window had been damaged as a result of the windstorm and that damage was not included in the previous allowed payment, the adjuster's estimate was revised to include a supplemental payment of $112.83. This was added to the previous payment of $16,113.87, which had been made on January 17, 2013. ASIC also noted that $992.95 of recoverable depreciation would be available once repairs were complete. Wheeler never accepted any payments for the claimed covered damage, however. His property is now in foreclosure proceedings.

4

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## ANALYSIS

### I. Breach of Contract (Count I)

ASIC argues that the Court must dismiss Wheeler's breach of contract claim because it sounds in fraud but does not meet the particularity requirements of Rule 9(b). But ASIC is asking for too much from Wheeler on this claim. Wheeler alleges the existence of an insurance contract that he claims was breached when ASIC refused to fully compensate him for damage he maintains is covered under the policy. This is a classic claim for breach of an insurance policy. *See W. Howard Corp. v. Indian Harbor Ins. Co.*, No. 1:10-CV-7857, 2011 WL 2582353, at *3 (N.D. Ill. June 29, 2011) (noting that plaintiff "clearly has stated claims for breach of the insurance policy" where plaintiff brought suit for the insured's denial of coverage for a claimed loss to insured property). Although Wheeler does mention deception in pleading his breach of contract claim, this singular mention does not require the imposition of a heightened pleading standard, as the claim exists independent of any allegations of fraud or deception contained in the complaint. *See Schaufenbuel v. InvestForClosures Fin., L.L.C.*, No. 09 C 1221, 2009 WL 3188222, at *3 (N.D. Ill. Sept. 30, 2009) (breach of contract claim subject to Rule 8's pleading standard as the claim "exist[s] independent of the alleged fraudulent scheme"). Nor are Wheeler's allegations of ASIC's bad faith subject to Rule 9(b)'s standards. *See GMP Techs., LLC v. Zicam, LLC*, No. 08 C 7077, 2009 WL 5064762, at *3 (N.D. Ill. Dec. 9, 2009) (bad faith allegations subject to Rule 8(a)); *Skinner v. Metro. Life Ins. Co.*, 829 F. Supp. 2d 669, 678 (N.D. Ind. 2010) ("[B]ad faith does not need to be pled with particularity[.]"); *cf. Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003) ("Rule 9(b) is strictly construed; it applies to fraud and mistake and nothing else."). Thus, Wheeler may proceed on his breach of contract claim.

**II.     Section 155 Damages (Count II)**

Next, ASIC argues that Wheeler's request for section 155 damages should be dismissed because the claim is subject to Rule 9(b) and Wheeler has not adequately alleged how ASIC's conduct was vexatious or unreasonable. Section 155 allows an insured to recover attorney's fees and extracontractual damages if an insurer's actions with respect to a claim made under a policy are "vexatious and unreasonable." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 902, 174 Ill. 2d 513, 221 Ill. Dec. 473 (1996). This statute, "while not the exclusive remedy for tortious conduct by an insurer, essentially substitutes for a separate tort of 'bad faith.'" *W. Howard Corp.* 2011 WL 2582353, at *3. But section 155 damages may not be awarded if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (citations omitted). As already discussed in connection with Wheeler's breach of contract claim, to the extent they do not sound in fraud, Wheeler's allegations regarding ASIC's bad faith and unreasonable conduct need not meet Rule 9(b)'s standards. *See GMP Techs., LLC*, 2009 WL 5064762, at *3. Because at least some of these actions could be considered only to rise to the level of bad faith and not fraud (indeed, as discussed below, Wheeler's fraud claim is insufficiently pleaded), the Court will not apply Rule 9(b)'s pleading requirements to conduct that does not necessarily sound in fraud.

Determining whether conduct is vexatious or unreasonable is a factual question determined by looking at the totality of the circumstances. *See Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007). But "[s]imply pleading that [the insurer] knowingly and

7

intentionally refused to provide insurance coverage and that [the insurer's] refusal 'was and continues to be vexatious and unreasonable,' without some modicum of factual support, is insufficient to plausibly suggest that [the insured] is entitled to relief under the statute." *Scottsdale Ins. Co. v. City of Waukegan*, No. 07 C 64, 2007 WL 2740521, at *2 (N.D. Ill. Sept. 10, 2007). Here, Wheeler alleges that ASIC acted in bad faith, providing a detailed list of allegations that he contends amount to vexatious and unreasonable conduct. Compl. ¶ 62. This is sufficient at this stage to allow the damages request to go forward. *See Strategic Capital Bancorp, Inc. v. St. Paul Mercury Ins. Co.*, No. 10-CV-2062, 2014 WL 562970, at *5–6 (C.D. Ill. Feb. 13, 2014) (noting that although defendant may "have the winning argument that a Section 155 award is unwarranted" because the insurer's position was based on a *bona fide* coverage dispute, such a conclusion was inappropriate at the motion to dismiss stage); *W. Wind Express v. Occidental Fire & Cas. Co. of North Carolina*, No. 10-CV-6263, 2013 WL 2285799, at *4 (N.D. Ill. May 23, 2013) ("[B]ecause [determining if an insurer's conduct was vexatious or unreasonable] presents a factual question, the Court may not decide the issue on the pleadings alone, although the issue may be susceptible to disposition at summary judgment if the facts developed fail to show a genuine issue of disputed material fact."); *W. Howard Corp.*, 2011 WL 2582353, at *3 (section 155 claim could proceed where plaintiff alleged that insurer took approximately a year and a half to make coverage determination and requested additional documentation over that time, despite plaintiff's belief many of the requests were irrelevant to loss); *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (allegations that insurer misrepresented facts and conducted inadequate investigation sufficient to survive motion to dismiss).

## III. ICFA Claim (Count III)

To state an ICFA claim, Wheeler must allege (1) a deceptive or unfair act or practice by ASIC, (2) ASIC's intent that Wheeler rely on the deceptive or unfair practice, (3) the unfair or deceptive practice occurred in the course of conduct involving trade or commerce, and (4) ASIC's unfair or deceptive practice caused Wheeler actual damage.[4] *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Recovery may be had for conduct that is either deceptive or unfair. *Robinson v. Toyota Motor Credit Corp.*,775 N.E.2d 951, 960, 201 Ill. 2d 403, 266 Ill. Dec. 879 (2002); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive."). A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Conduct is considered unfair if it (1) violates public policy, (2) is "so oppressive that the consumer has little choice but to submit," or (3) causes consumers substantial injury. *Siegel*, 612 F.3d at 935. Wheeler appears to proceed only on a deceptive practices theory, and thus his pleading must meet Rule 9(b)'s heightened standard.[5]

---

[4] Unlike for common law fraud, reliance is not an element of an ICFA claim. *See, e.g.*, *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576–77 (7th Cir. 2001) (although common law fraud claim was barred because plaintiff could not show it relied on oral representations different from contract terms, ICFA claim could proceed past motion to dismiss based on the same facts because reliance is not a required element of an ICFA claim).

[5] Wheeler mentions in his response that an unfair practices theory need only meet the notice pleading standard of Rule 8(a), but he makes no argument as to how the conduct alleged in his complaint is based on unfair practices instead of deceptive conduct. Wheeler's allegations are premised on allegedly deceptive conduct. *See, e.g.*, Compl. ¶ 66 ("Assurant and American Security willfully, purposely and deceptively failed to settle Wheeler's insurance claim against his homeowners policy at or near the time of loss by the deceptive use of multiple experts . . . ."). Wheeler's argument in response about the applicable pleading standard does not transform his ICFA claim into one for unfair practices as well. *See Camasta*, 761 F.3d at 737 (addition of "unfairness" language did not change ICFA claim "entirely grounded in fraud" into unfairness claim); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v.*

ASIC first argues that Wheeler's ICFA claim fails because it is merely a duplicate of his breach of contract claim. Wheeler may not take his breach of contract claim and "dress [it] up in the language of fraud" in an attempt to state an ICFA claim. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) ("[F]raud claims must contain something more than reformulated allegations of a contractual breach. . . . [B]reach-of-contract allegations dressed up in the language of fraud . . . . cannot support statutory or common-law fraud claims."); *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 844, 216 Ill. 2d 100, 296 Ill. Dec. 448 (2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act."). Wheeler cannot merely claim that ASIC acted in bad faith to pay him less on his claim than allowed under the policy. *See M.W. Widoff, P.C. v. Encompass Ins. Co. of Am.*, No. 10 C 8159, 2012 WL 769727, at *4 (N.D. Ill. Mar. 2, 2012) ("The deceptive act must involve something more than the promise to do something and a corresponding failure to do it.").

Courts have found that plaintiffs cannot proceed on ICFA or fraud claims against their insurers where they merely allege that the insurer "failed to pay the claim, made 'bad faith' demands for documents, conducted a burdensome investigation, delayed in resolving the claim, rested the denial of the claim on the actions or inactions of [the insured] or its agents, and represented in its policy that 'it would pay valid claims,' when in fact it has not paid." *W. Howard Corp.*, 2011 WL 2582353, at *5. Such conduct has been found to amount to nothing more than "a denial of benefits and breach of contract, with an accompanying bad faith claim under § 155." *Id.*; *see also New Park Manor, Inc. v. N. Pointe Ins. Co.*, No. 13 C 4537, 2013 WL 5408856, at *4–7 (N.D. Ill. Sept. 26, 2013) (dismissing ICFA claim where plaintiff alleged that it relied on insurer's settlement evaluation figures in submitting proof of loss based on those

---

*Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011) (pleading was premised on intentional concealment and so it was appropriately interpreted not as an unfair practices claim but as a deceptive practices claim subject to Rule 9(b)).

numbers but that insurer then demanded more documentation and examination under oath of plaintiff's principals, ultimately rejected claim, and accused plaintiff of fraud, claim inflation, and failure to produce documents in support of its damage claims).

But in *General Insurance Co. of America v. Clark Mali Corp.*, the court allowed an ICFA claim to proceed where the insured alleged that the insurer promised it would pay valid claims but then consistently delayed bringing the claim process to a resolution while demanding additional information and presenting a "façade of compliance." No. 08 C 2787, 2010 WL 1286076, at *4 (N.D. Ill. Mar. 30, 2010). The court found that "[s]tringing the insureds along with the intimation that things were progressing toward a resolution when, in reality, there is no end in sight, making unreasonable and irrelevant demands, and never providing a definite answer certainly qualifies as an allegation of deception and intent that the other party rely on that deception." *Id.*; *see also Burress-Taylor v. Am. Sec. Ins. Co.*, 980 N.E.2d 679, 689, 2012 IL App (1st) 110554, 366 Ill. Dec. 586 (2012) (ICFA claim not preempted by section 155 where allegations suggested an insurance company taking "a series of dilatory, deceptive and punitive maneuvers to mask [its] non performance" and "doing all in its power to wear down the insureds and to put off indefinitely a frank decision regarding coverage and the reasons for the denial"). Here, like in *Clark Mali*, Wheeler alleges that ASIC represented it was complying with its contractual obligations and working on settling the claim by engaging Moersfelder and working with him and Wheeler to repair the house, only to later delay and insist on engaging a second expert—whom Wheeler claims ASIC paid specifically to contradict Moersfelder's report—so as to deny the majority of Wheeler's claimed loss. At this stage, these allegations are sufficient to take Wheeler's allegations out of the realm of a mere breach of the insurance contract, as they rise to the level of alleged fraud in paying off a retained expert to render a contrary opinion so as

to provide a basis for denying a valid claim. Although the validity of Wheeler's allegation remains to be proven, the Court cannot say it is merely one for breach of contract accompanied by a claim for section 155 damages.

But even so, Wheeler's ICFA claim must be dismissed as Wheeler has not adequately alleged the purported deceptive conduct with particularity as required by Rule 9(b). The complaint does not allege who specifically paid Rimkus Consulting to contradict Moersfelder's report or who gave Rimkus Consulting such instructions. *See Nalco Co. v. Chen*, No. 12 C 9931, 2013 WL 4501425, at *4 (N.D. Ill. Aug. 22, 2013) ("References to the name of the company as being the source of the misrepresentation, without identifying the parties to them, is not enough to meet Rule 9(b)'s pleading standard."). Even the fraudulent scheme itself is implied but undefined. Although the Court recognizes that some of this information may be outside of Wheeler's knowledge, he has not adequately provided the grounds for his suspicions. *See Pirelli*, 631 F.3d at 442–43 ("[A] plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief. The general rule that fraud cannot be pled based on information and belief is not ironclad; the practice is permissible, so long as (1) the facts are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" (citations omitted)). Given the pleading deficiencies here, Wheeler's ICFA claim is dismissed.

## IV. Fraud (Count IV)

To state a claim for fraud, Wheeler must allege that (1) ASIC made a false statement or omission of material fact, (2) ASIC knew of or believed in its falsity, (3) ASIC intended to induce Wheeler to act, (4) Wheeler acted in reliance on the truth of ASIC's statements, and (5) damages resulted from Wheeler's reliance. *Weidner v. Karlin*, 932 N.E.2d 602, 605, 402 Ill.

App. 3d 1084, 342 Ill. Dec. 475 (2010). Wheeler alleges that ASIC falsely represented that his insurance claim was worth less than it was so as to deny him adequate funds to repair the house. He further alleges that ASIC intended to induce Wheeler to accept payments in an amount less than what his claim was worth and that he relied on the statements "with the good faith intention of attempting to fairly resolve his claim so that Wheeler could perform repairs on the Wheeler Residence that were the result of the storm of July 11, 2011." Compl. ¶¶ 73–74. But his allegation of reliance falls short, as he specifically states that he refused to accept ASIC's tendered payments, and so he did not resolve his claim with ASIC on the basis of these alleged misrepresentations, and indeed, as evidenced by this lawsuit, is continuing to contest ASIC's denial of his claim. *See* Compl. ¶ 44. Without having compromised the claim, Wheeler cannot contend that he relied on ASIC's alleged representations regarding the value of Wheeler's claim to his detriment. *See Reid v. Harvey Motorcycle & Camper*, No. 05 C 5375, 2007 WL 4277435, at *6 (N.D. Ill. Nov. 30, 2007) ("Reid must demonstrate that he entered into a transaction in reliance on Watson's fraudulent statements and suffered damages as a result of his reliance. Since Reid did not enter into a transaction with Watson in reliance on Watson's fraudulent statements, . . . his claim once again fails[.]"). Thus, Wheeler's fraud claim is dismissed.

V. **Unjust Enrichment (Count V)**

For his unjust enrichment claim, Wheeler pleads that he paid ASIC inflated premiums, which ASIC unjustly retained when it did not expeditiously resolve his claim. Although the existence of a contract "does not automatically bar an unjust enrichment claim," *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006), a quasi-contractual claim cannot be sustained when an express contract governs the relationship of the parties, *id.* at 855; *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill. 2d 473, 180 Ill. Dec. 271 (1992)

13

("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" (citation omitted)). Although Wheeler purports to plead his unjust enrichment claim in the alternative, he expressly incorporates the existence of the insurance policy into his unjust enrichment claim. This is cause for dismissal.[6] *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (unjust enrichment claim unavailable where insured alleged that insurer was liable for breaching contract and that if insurer did not breach contract, then it owed insured damages for unjustly enriching itself with her premiums); *Ford v. Pacific Webworks, Inc.*, No. 09 C 7867, 2011 WL 529265, at *4 n.7 (N.D. Ill. Feb. 4, 2011) ("[B]reach of contract and unjust enrichment may be pleaded in the alternative as long as plaintiffs have not incorporated allegations of a contract into their unjust enrichment claim.").

## VI. Breach of Fiduciary Duty (Count VI)

Finally, ASIC argues that Wheeler's breach of fiduciary duty claim should be dismissed because it is duplicative of his breach of contract claim. Although duplicative counts may be dismissed, *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010), the Court is not persuaded that dismissal is warranted here. Illinois cases have dismissed breach of contract and breach of fiduciary duty claims where they are duplicative of malpractice claims, allowing only a malpractice claim to proceed. *See Gritters v. Ocwen Loan Servicing, LLC*, No. 14 C 00916, 2014 WL 7451682, at *9–10 (N.D. Ill. Dec. 31, 2014) (collecting cases). But this appears to be specific to malpractice cases and thus not applicable to Wheeler's breach of contract and fiduciary duty claims, which have separate elements and can be pleaded in the alternative. *See*

---

[6] The Court notes that this argument was not explicitly raised by ASIC in its opening brief, in which ASIC argued that unjust enrichment is not a separate cause of action, but rather was invited by Wheeler in his response when he argued that a party can properly plead unjust enrichment in the alternative to a breach of contract claim. Because it was addressed by both sides, it is a proper basis for dismissal.

14

*id.* at *10 ("[T]he Court is not persuaded that relevant authority compels or even encourages the dismissal of a breach-of-fiduciary duty claim as 'duplicative' of a breach-of-contract claim—especially where Federal Rule of Civil Procedure 8(d) explicitly permits a party to plead alternative claims."). This does not mean that Wheeler would be allowed a duplicative recovery if both claims proceed to trial, but only that at this stage the Court will not dismiss his fiduciary duty claim as duplicative of his breach of contract claim. *Id.* ("To be sure, if both claims proceed to trial and the *damages* sought are indeed duplicative, Gritters' potential recovery will be appropriately limited.").

In reply, ASIC argues that Wheeler's breach of fiduciary duty claim must be dismissed because there is no fiduciary relationship between an insurer and an insured. *See Martin v. State Farm Mut. Auto Ins. Co.*, 808 N.E.2d 47, 51, 348 Ill. App. 3d 846, 283 Ill. Dec. 497 (2004). In such a case, the party asserting the existence of a fiduciary relationship must allege that a duty arose from "the special circumstances of the parties' relationship, where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Id.* at 52. Wheeler alleges that he "placed his trust in [ASIC] given their purported expertise, superiority and dominance over the insurance policy, the Wheeler claim and Wheeler." Compl. ¶ 83. The Court need not determine whether this is sufficient to allege a fiduciary duty at this stage, as ASIC raised the argument regarding the existence of a duty too late. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."). Thus, the Court will allow Wheeler's fiduciary duty claim to proceed to discovery, where the parties can explore whether special circumstances existed between them that gave rise to a fiduciary duty.

15

## CONCLUSION

For the foregoing reasons, ASIC's motion to dismiss [29] is granted in part and denied in part. Counts III (fraud), IV (ICFA violation), and V (unjust enrichment) are dismissed without prejudice.

Dated: August 28, 2015

_____
SARA L. ELLIS
United States District Judge